**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____  :
                                :
FRANCIS R. SMITH AND            :
PATRICIA SMITH                  :           Civil Action No.
                                :
            Plaintiffs,         :           05-2439 (NLH)
                                :
            v.                  :
                                :
FREIGHTLINER, LLC               :           **OPINION**
                                :
      and                       :
                                :
FLEETWOOD MOTOR HOME CORP.      :
                                :
            Defendants.         :
_____ :

**APPEARANCES:**
Michael D. Power, Esq.
Power & Associates, P.C.
One Greentree Centre
Suite 201
Marlton, NJ 08053
*Attorney for Plaintiffs*

Matthew W. Bauer, Esq.
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068
*Attorney for Defendant Freightliner Custom Chassis Corp.,*
*improperly pled as Freightliner, LLC*

Richard V. Jones, Esq.
Bressler, Amery & Ross, Esqs.
325 Columbia Turnpike
P.O. Box 1980
Florham Park, NJ 07962
*Attorney for Defendant Fleetwood Motor Home Corp.*


**HILLMAN, District Judge**

## I.  INTRODUCTION

    This is a Lemon Law case brought under New Jersey law by

owners of a Fleetwood Motor Home that sits on a Freightliner
chassis.  Defendants moved for summary judgment to dismiss
plaintiffs' claims and to have plaintiffs' expert disqualified.
On October 27, 2006, oral argument was held on defendants'
motions for summary judgment, and this Opinion supplements the
Court's oral rulings expressed at that hearing.  On October 31,
2006, a <u>Daubert</u> hearing was held to conduct an inquiry into the
reliability of the proposed testimony of plaintiffs' expert.  For
the reasons set forth below, the proffered testimony of
plaintiffs' expert is excluded.  Plaintiffs' Lemon Law, breach of
warranty and Magnuson-Moss claims survive summary judgment.
Plaintiffs' claim for consumer fraud is withdrawn, and therefore
dismissed.

## II.   **BACKGROUND**

Plaintiffs, Francis H. Smith and Patricia M. Smith,
purchased a new 2004 motor home on or about December 3, 2003,
from Tom Raper, Inc. in Indiana, an authorized Fleetwood dealer.
The chassis of the vehicle was manufactured and warranted by
defendant Freightliner, and the non-chassis component, or coach,
was manufactured and warranted by defendant Fleetwood.  The
purchase price was approximately $191,000.00.[1]  Freightliner
provided a three year or 50,000 mile warranty covering the

---

[1] Plaintiffs maintain that the purchase price of the
vehicle, including registration charges, document fees, sales
tax, finance and bank charges total more than $285,000.00.

chassis.  Fleetwood provided a one year or 15,000 mile limited warranty, and three year structural[2] warranty.

The Smiths immediately began experiencing problems with the motor home, including a vibration condition that caused a "harsh ride."  The Smiths also complained that various items in the living facilities portion rattled or had come loose.  In January 2004, the Smiths took their motor home to Indianapolis for repair to the air bags and "harsh ride."  It was also serviced at another Chevrolet dealer for air leaks in the entry door and for drawers not closing.  In August 2004, the Smiths returned the motor home to Tom Raper for complaints of the television falling out of the cabinet while in transit.

On November 24, 2004, the Smiths wrote a letter to Tom Raper, Inc. with a laundry list of problems they were experiencing with the motor home.  The motor home was kept for service from November 29, 2004 to December 17, 2004.  On February 14, 2005, the Smiths wrote another letter to Tom Raper, Inc. stating that certain problems contained in the November 29, 2004 to December 17, 2004 service report had not been resolved.  On May 31, 2005, they wrote another letter to Tom Raper, Inc., listing additional problems they were experiencing as well as reiterating the outstanding problems.

---

[2] Structural defects are defined in the warranty as limited to roof structure, sub-floor structure, and Vacubond walls.

On June 27, 2005, the Smiths wrote another letter to Tom Raper, Inc. essentially repeating of the problems listed in their May 31, 2005, letter with the added sentence that the motor home continues to have a rough ride.  In addition, they wrote that they were making a second request to repair certain items that were listed in the November 29, 2004 to December 17, 2004 service report.

On March 23, 2005, plaintiffs filed claims in the Superior Court of New Jersey against Freightliner and Fleetwood for breach of warranty, violations under the Federal Magnuson-Moss Act, 15 U.S.C. § 2301, and consumer fraud.  The case was subsequently removed to this Court on or about May 4, 2005.[3]  Freightliner filed a motion for summary judgment and Fleetwood joined in Freightliner's motion as well as filed its own motion for partial summary judgment.  For the reasons explained below, defendants motions are granted in part and denied in part.

### III. DISCUSSION

#### A.   Plaintiffs' Proposed Expert

Defendants moved to have plaintiffs' expert, Charlie Barone, disqualified because he does not possess specialized knowledge

---

[3] Although plaintiffs brought a claim under New Jersey's Lemon Law claim, N.J.S.A. 56:12-29, et seq., against Fleetwood only, all parties agreed that the case has proceeded as if plaintiffs filed a Lemon Law claim against Freightliner.

relevant to motor homes, and to have Barone's proposed testimony

barred because his report does not exhibit that he based his

opinion on any discernable methodology.  Plaintiffs respond that

under Fed.R.Evid. 702, Mr. Barone's experience in automotive body

reconstruction and automotive value appraisal provides him with

the necessary practical experience and training in a field

tangentially related to diminution in value of the motor home at

issue.  Plaintiffs further respond that Mr. Barone has "good

grounds" for his opinion that the motor home suffers a decrease

of twenty-five percent in value due to the alleged vibration

condition.

Due to the lack of information concerning Mr. Barone's

methodology in arriving at the twenty-five percent diminution in

value of the motor home, this Court held a Daubert hearing.  See

Elcock v. Kmart Corp., 233 F.3d 734, 745 (3d Cir.  2000) (a court

is not required to conduct a Daubert hearing but can do so if

significant reliability questions are raised by the expert's

methodology, and if a Daubert hearing would permit a fuller

assessment of expert's analytical processes).  An examination of

Mr. Barone's qualifications satisfied the Court that, under the

liberal admissibility requirements under Fed.R.Evid. 702, Mr.

Barone possesses the specialized knowledge that could assist a

jury as to the diminution in value of a motor home.  Elcock v.

Kmart Corp., 233 F.3d 734 (3d Cir. 2000) (stating that the

specialized knowledge requirement of Rule 702 is interpreted
liberally); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717 (3d
Cir. 1994)(same).  Mr. Barone has over thirty years experience in
the automotive repair industry, and has ASE certifications in
vehicle damage appraisal.  In addition, he has authored numerous
articles in the field of automobile repair and valuation, owns
his own automotive appraisal business, and has analyzed vehicles
with vibration concerns, or frame concerns.  Finally, he has
conducted appraisals on approximately 700 vehicles.

Although Mr. Barone has experience in assessing the value of
motor vehicles, he does not have experience or expertise
regarding the possible impairment of the use or safety of the
vehicle.  Therefore, Mr. Barone does not qualify as an expert on
these topics. See N.J.S.A. 56:12-30, (defining nonconformity
under the Lemon Law as "a defect or condition which substantially
impairs the use, value or safety of a motor vehicle.")

Although Mr. Barone qualifies as an expert as to the
diminution in value of the motor home, his report and proposed
testimony lack a discernable methodology and, therefore, are
barred.  As part of its gate-keeping function, the Court must
evaluate whether a particular methodology is reliable, including
the "... testability of the expert's hypothesis." In re Paoli, 35
F.3d at 742.  During the Daubert hearing, Mr. Barone testified
that his method for determining diminution in value is to assess

the following four factors: (1) the nature of the vehicle (i.e., luxury or economy, and the buyer's higher expectation with luxury vehicles); (2) the nature of the vehicle damage ($2,000 worth of frame and suspension damage lowers value more than $2,000 worth of paint damage); (3) the severity of the damage (cost to repair, and number of attempts to repair); and (4) the impact of the "stigma" attached to the vehicle due to the damage.  Applying his method to the Smiths' motor home, Mr. Barone testified that he test rode[4] the vehicle and felt a vibration.  He also said that he reviewed the repair history of the vehicle and service complaints made by the plaintiffs.  Mr. Barone further testified that he determined that a "stigma" attached to the motor home because it vibrated, and subsequent repairs did not fix the problem.  Based on his evaluation, Mr. Barone determined that the vehicle suffered a twenty-five percent loss in value.

It is not clear, however, how Mr. Barone derived this twenty-five percent figure.  Even if the Court were to accept the four point methodology used in this case, Mr. Barone did not adequately assess factors two and three of his own methodology.  He did not determine what the cost of the repairs would have been had they not been covered under warranty, and he did not determine what it would cost to fix the alleged vibration

---

[4]  Mr. Barone testified that he rode in the Smiths' motor home as a passenger but did not drive it.

condition.  A basic requirement under <u>Daubert</u> is that the methodology followed is capable of being replicated. <u>Id</u>.  Here, the methodology was not followed by Mr. Barone and thus cannot be replicated.  Moreover, the Court is left unsatisfied as to how Mr. Barone derived the twenty-five percent figure.  Even acknowledging that experience in the field of value assessment can be more helpful, or more accepted, than precise measurements, the Court cannot say that Mr. Barone did not pull the twenty-five percent reduction out of a hat.[5]  Accordingly, Mr. Barone will not be permitted to testify as to the diminution in value of the motor home.

**B.    Lemon Law Claim**

Fleetwood argues in its motion for partial summary judgment that it cannot be held liable under New Jersey's Lemon Law for two reasons: (1) the problems alleged by plaintiffs that pertain to the "living facilities" portion of the motor home are not covered under the Lemon Law; and (2) Fleetwood is not a "manufacturer" as defined under the statute.

Fleetwood is correct in its first argument that problems pertaining to the "living facilities" of a motor home are not

---

[5]  Moreover, Mr. Barone testified that the twenty-five percent diminution in value can be allocated as fifteen percent reduction in value of the living facilities portion and ten percent diminution in value of the chassis portion.  He provides no further information how these values were derived or apportioned.

covered under New Jersey's Lemon Law.  Under N.J.S.A. 56:12-30,

the definition of a Motor Vehicle includes "a passenger

automobile or motorcycle as defined in [N.J.S.A.] 39:1-1...*except*

*the living facilities of motor homes."* (emphasis added).

Although there is no New Jersey law interpreting this definition,

given the plain language of the statute, we determined that the

New Jersey courts would exclude from plaintiffs' Lemon Law claim

any complaints that pertain to the living facilities.  See

Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818,

822 (3d Cir. 1999)(stating that "[i]n the absence of a specific

statutory definition, the language of the statute should be given

its "ordinary meaning and construed in a common sense manner to

accomplish the legislative purpose.")(citations omitted).

     Plaintiffs have conceded that this is the correct

interpretation of the definition under the statute and agreed

that all of the alleged problems with the motor home, except for

the vibration condition, are excluded under the Lemon Law.

Although the parties do not agree whether the alleged vibration

emanates from the chassis, they do agree that it falls outside of

the living facilities.  Therefore, the inquiry is whether

Fleetwood, who did not manufacture the chassis, but assembled the

chassis onto the coach and sold the assembled motor home through

its authorized dealer to plaintiffs, can still be liable under

New Jersey's Lemon Law for a defect, here a vibration condition,

that falls outside of the living facilities.  This question has not been answered to date by the New Jersey courts.  Based upon the definition of manufacturer under the Lemon Law, we believe that the New Jersey courts would rule that Fleetwood is a manufacturer and potentially liable for defects that occur outside of the living facilities.

The definition of "manufacturer" under N.J.S.A. 56:12-30, is a "person engaged in the business of manufacturing, assembling or distributing motor vehicles, who will, under normal business conditions during the year, manufacture, assemble or distribute to dealers at least 10 new motor vehicles."  As stated above, motor vehicle is defined under the Act as a "passenger automobile or motorcycle as defined in [N.J.S.A.] 39:1-1...39:1-1...except the living facilities of motor homes."  Turning to N.J.S.A. 39:1-1, the definition of "passenger automobile" includes "all automobiles used and designed for the transportation of passengers, other than omnibuses[6] and school buses." "Automobiles" is defined as "all motor vehicles except motorcycles," and "motor vehicles" is defined as "all vehicles propelled otherwise than by a muscular power, excepting such vehicles as run only upon rails or tracks and motorized bicycles." N.J.S.A. 39:1-1.  Under this broad and rather tortuous

---

[6] "Omnibus" includes "all motor vehicles used for the transportation of passengers for hire..."

definition, Fleetwood appears to fall under the definition of
manufacturer under the Lemon Law Act since it manufactures,
assembles or distributes "motor vehicles."

Other jurisdictions have found the non-chassis manufacturer
not liable under the particular state's Lemon Law.  Fleetwood, as
a non-chassis manufacturer, urges the Court to follow the
decisions of those courts.  Particularly, Fleetwood asks the
Court to follow the decisions in Parks v. Newmar, 384 F.Supp.2d
966 (W.D. Va. 2005) and Anderson v. Newmar, 319 F.Supp.2d 943 (D.
Minn. 2004).  In Parks, the definition of a motor vehicle under
Virginia's Lemon Law includes "*only* passenger cars, pickup or
panel trucks, motorcycles, *self-propelled motorized chassis of
motor homes....*" Id. at 968 (emphasis added in Opinion).  In
Anderson, Minnesota's Lemon Law defined motor vehicles as "(1) a
passenger automobile ... including pickup trucks and vans, and
(2) the *self-propelled motor vehicle chassis* or van portion of
recreational equipment ..." Id. at 946 (emphasis added).

Although the Parks and Anderson cases found the non-chassis
manufacture not liable, both definitions in those cases are
different from New Jersey's definition of "motor vehicle" under
the Lemon Law.  Rather than limiting a motor vehicle to the self-
propelled chassis, New Jersey's definition includes the motor
home but excludes the living facilities portion. See In re
Prudential Ins. Co. of America Sales Practice, 133 F.3d 225, 234

n. 13 (3d Cir. 1998)(referring to the canons of statutory interpretation that mandate narrow construction of an exception in the presence of ambiguity).  Even if Fleetwood did not manufacture the chassis, it did manufacture the coach which includes such non-living facilities as the driver's and passengers' seats, dashboard, controls, and other similar features commonly found in passenger vehicles.  Therefore, New Jersey's definition is broader than both Virginia's and Minnesota's, and it is this Court's opinion that the New Jersey courts would find that Fleetwood is a manufacturer for purposes of the Lemon Law.

Fleetwood also raises the argument that since it did not manufacture the chassis, and since it expressly disclaimed any warranty as to the chassis portion, it should not be liable for any defect regarding the chassis.  We disagree.  We do not think that the New Jersey legislature envisioned makers of motor homes contracting around the Lemon Law simply because they did not manufacture or warrant the chassis.  Fleetwood purchased Freightliner's chassis and attached the coach to the chassis. Fleetwood sold the motor home, as one unit, to the consumer.  As explained above, by only excluding the "living facilities" portion in the definition of motor vehicles, the legislature contemplated that the manufacturer of the motor home could be liable for areas that fell outside the living facilities. Id.

Having established that Fleetwood and Freightliner are manufacturers under New Jersey's Lemon Law,[7] the next step for plaintiffs is to be able to prove that (1) a defect exists; and (2) that the defect is a "nonconformity." <u>Christelles v. Nissan Motor Corp</u>., 701 A.2d 1317 (N.J. Super. 1997). "Nonconformity" is defined as a "defect or condition which substantially impairs the use, value, or safety of a motor vehicle." <u>Id</u>. In establishing whether a Lemon Law claim can prevail, the inquiry is whether a reasonable person in the buyer's position could conclude that the defect impairs the use and value of the car and shakes the buyer's confidence in it. <u>Suber v. Chrysler Corp.</u>, 104 F.3d 578 (3d Cir. 1997). Under the Lemon Law, if a consumer reports a nonconformity within two years of the date of delivery, or the first 18,000 miles, whichever comes first, the manufacturer is required to repair it. N.J.S.A. 56:12-31. If the manufacturer is unable to repair the nonconformity within a reasonable time, the manufacturer shall accept return of the vehicle (calculated as a refund of the purchase price, plus relevant expenses, minus allowance for use of the vehicle). <u>Id</u>. Defendants have not argued that plaintiffs are time-barred under the Lemon Law, and the facts suggest that plaintiffs have met

---

[7] Freightliner has not argued that it is not a manufacturer under the Act. During oral argument on the summary judgment motions, Freightliner conceded that it is a manufacturer under New Jersey's Lemon Law.

this burden.

The parties agree that the alleged condition that falls outside of the living facilities portion, and is cognizable under the Lemon Law, is the vibration condition.  Plaintiffs have presented evidence, including the proffered testimony of the plaintiffs and extensive repair record, suggesting that the vibration condition exists and substantially impairs the use and value of the vehicle.  Defendants have presented evidence and expert reports that suggest that no vibration condition exists. Based on the record before the Court, we cannot rule as a matter of law that reasonable minds could not differ as to whether the vibration amounts to a nonconformity under the Lemon Law.

In addition, defendants have argued that the vibration claim under the Lemon Law should be dismissed because plaintiffs must present "objective evidence" of the nonconformity through an expert and plaintiffs' expert should be disqualified.  New Jersey law is clear that plaintiffs do not need an expert to present objective evidence on their Lemon Law claim.  Christelles, 701 A.2d at 1321 (finding absence of corroborating expert testimony is not fatal to a lemon law claim).  Plaintiffs' subjective opinion is not admissible to prove a nonconformity, but their objective testimony as to what they observed is admissible. Therefore, defendants' motions for summary judgment to dismiss plaintiffs' Lemon Law claim are denied.

14

### C.   **Breach of Warranty/Magnuson-Moss Claims**

Genuine issues of material fact appear to exist as to whether defendants breached their respective warranties provided to plaintiffs.

In their motion for summary judgment, Freightliner argues that plaintiffs attempted to revoke acceptance and demand repurchase with no evidence that the goods were non-conforming. Further, Freightliner provides that the suspension and other separate components provided by Freightliner did conform, and Freightliner's exclusive remedy did not fail of its essential purpose because it made the necessary warranty repairs free of charge.  Plaintiffs disagree and state that they are capable of providing evidence through testimony as to the vibrations emanating from the motor home while in transit, and can submit service reports and invoices that directly and indirectly address the vibration concern.

Taking all inferences in the light most favorable to the non-moving party, we cannot say as a matter of law that reasonable minds could not differ as to whether a vibration condition exists and whether the remedy provided by defendants failed in its essential purpose.  Therefore, defendants' motion (submitted by Freightliner and joined by Fleetwood) for summary judgment is denied on this issue.

In addition, Fleetwood argues in its separate motion for partial summary judgment that to the extent that the alleged defects are attributable to the chassis, Fleetwood is not responsible.  Fleetwood argues that since it expressly disclaimed any warranty on the chassis, and the chassis is expressly warranted by Freightliner, it is not responsible for any defect or nonconformity regarding the chassis.  Plaintiffs respond that even though Fleetwood expressly disclaimed any warranty for a defect in the chassis, an implied warranty of merchantability applies against Fleetwood under the Magnuson-Moss Warranty Act. Fleetwood replies that Magnuson-Moss applies only where the manufacturer supplies a written warranty and it did not provide any written warranty for the chassis.

Fleetwood's argument presumes that the vibration is due to a defect in the chassis.  However, the cause of the alleged vibration has not been determined.  While there is no evidence in the present record as to the precise cause of the alleged vibration, there is sufficient evidence that the vehicle as a whole has a vibration problem.  Thus, it cannot be determined by a matter of law that the vibration condition is not covered under Fleetwood's warranty and, therefore, Fleetwood's motion for partial summary judgment on this issue is dismissed.

D.    **Consumer Fraud Claim**

The plaintiffs withdrew their claim of consumer fraud

against both defendants during oral argument held on October 27, 2006.  Therefore, this claim is dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the proffered testimony of plaintiffs' expert is excluded.  Plaintiffs' Lemon Law, breach of warranty and Magnuson-Moss claims survive summary judgment. Plaintiffs' claim for consumer fraud is withdrawn and, therefore dismissed.

An Order will be entered consistent with this Opinion.


                              s/Noel L. Hillman
                            NOEL L. HILLMAN, U.S.D.J.

Camden, New Jersey

Dated: November 13, 2006


17